(31 Misc. Rep. 715.)

## BALMFORD v. PEFFER.

(Supreme Court, Appellate Term. June 13, 1900.)

1. CONTRACTS—EVIDENCE.

Plaintiff, for the purpose of seeing whether or not defendant's mother would pay certain funeral expenses incurred in the burial of the wife of an employé of defendant's mother, called at the latter's home. Defendant's mother was ill, and defendant said she would do just as well. Defendant, after a conversation as to the cost, told plaintiff to "go on and do the work," and directed him to send the bill to her mother. Subsequently plaintiff sent a bill to defendant's mother, and receipted to her for a payment. He also wrote her letters concerning the bill. *Held*, that defendant was not liable, since the credit was extended to defendant's mother, and not to defendant.

**2. TRIAL—INSTRUCTIONS—EVIDENCE.**

In an action where it is sought to charge defendant on the ground that she exceeded her authority when she sought to act as agent for her mother, it is error to charge that there is some evidence that she exceeded her authority, where there is no evidence as to the extent of her authority; and such error is not cured by an instruction that it was incumbent on plaintiff to show that defendant had exceeded her authority.

**3. STATUTE OF FRAUDS—PLEADING.**

A defense that a promise to pay the debt of another cannot be enforced for the reason that it is not in writing, and signed by her, to be available, must be pleaded.

Appeal from municipal court, borough of Manhattan.

Action by Thomas Balmford against Margaret A. Peffer. From a judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before BEEKMAN, P. J., and GIEGERICH and O'GORMAN, JJ.

Clark B. Augustine (William O. Gantz, of counsel), for appellant. J. Baldwin Hands, for respondent.

GIEGERICH, J. The claim of the plaintiff, as upon the earlier trial, is based upon a conversation alleged to have taken place between the parties concerning his employment as an undertaker to bury the wife of one William Osborne. He testified that, after a conversation with the husband of the deceased concerning the cost of the funeral, he declined to proceed, as he was not satisfied as to the latter's pecuniary ability, whereupon the husband declared that his aunt, one Mrs. Dean, by whom he was at the time employed, would pay the bill. The plaintiff, for the purpose of having the order confirmed, then went to the residence of Mrs. Dean, and there met the defendant, who informed him that her mother was ill, and could not be seen, but "she would do as well." The plaintiff then stated he had called for the purpose of having an order for the funeral of the wife of William Osborne confirmed, and a conversation then ensued regarding the amount of the charge therefor, the defendant asking where it could be reduced, and he pointing out in what regards it could be done. According to the plaintiff's testimony, the defendant then stated that they ought to take the cheaper coffin, to make it $20 less, "and we agreed upon the amount of $70; and she told me it was all right; to go on and do the work"; and further directed plaintiff to forward the bill to Mrs. Dean, which he did. Viewing, as we must, the foregoing testimony in the most favorable light to the plaintiff, it is manifest that it was not the intention of either party that the defendant should become personally responsible for the funeral expenses. The object of the plaintiff in calling at the residence of Mrs. Dean was to obtain her guaranty for the payment of the bill, but by mere chance met the defendant, to whom he stated the purpose of his visit. It is clear, even from the plaintiff's version of the entire conversation had between them, that each understood that the defendant was acting merely as a representative of Mrs. Dean, and not individually, and that credit was given to Mrs. Dean. The subsequent acts of the plaintiff confirm this view, for within a few days after the funeral he sent a bill to Mrs. Dean, and later

on made out a receipt to her for a payment on account. He further, by several letters, demanded payment of the balance from Mrs. Dean, and also wrote to the latter's attorney in fact, requesting him to send a check "for the balance due from Mrs. Dean." In a letter written by the plaintiff to the latter, bearing date May 24, 1899, he states, "I did the work at a low price on your assurance that you would pay the bill." The plaintiff admits the defendant never promised to pay the bill, that he never sent her a letter with respect thereto, and that the first demand he made upon her for payment thereof was by this action. When asked upon cross-examination why he did not ask the defendant for payment when he failed to get it from Mrs. Dean or her attorney in fact, David L. Osborne, the plaintiff answered, "I took this course instead." It thus appearing upon the plaintiff's own showing that he looked to Mrs. Dean, and not to the defendant, for payment, the justice erred in denying the motion to dismiss the complaint, made when the plaintiff rested, and renewed upon the close of the case. Hence the exceptions noted to such rulings were well taken.

Upon comparing the testimony of the plaintiff as set forth in the opinion of the court delivered by Mr. Justice Leventritt upon the former appeal (30 Misc. Rep. 118, 61 N. Y. Supp. 787) with that given upon the trial which is the subject of this review, it is obvious that the testimony of the plaintiff is an afterthought, and was given with a view of fastening, if possible, a personal liability upon the defendant for the services in suit. There the plaintiff testified: "I told her [defendant] my business, and she said that it was all right; that Mrs. Dean would be security for the amount. Before saying that, she changed the order, and lessened it by twenty dollars, * * * and said to go on, and send the bill to Mrs. Dean." Here, as above noted, the plaintiff gave testimony to the effect that the defendant told him "to go on and do the work." The position thus assumed by the plaintiff is inconsistent with all his acts subsequent to the alleged conversation with the defendant. Apart from this, the husband of the defendant testified (and he was not contradicted by the plaintiff) that during the course of a conversation had with the latter he asked him whether his wife "had said anything in regard to the matter of making her responsible," and that the plaintiff replied: "Never. It is Mrs. Dean who is responsible for the bill." The attorney in fact for Mrs. Dean gave testimony to the effect that the plaintiff looked to the latter for payment of the bill, and that he made a payment on account thereof at the request of William Osborne, from whom the plaintiff was to receive monthly payments of $10 each out of his wages. This is in entire harmony with the defendant's version of the conversation had with the plaintiff, and which is to the effect that her mother had arranged to pay him $10 a month on account of the bill as long as William Osborne worked for her, and that the latter worked for Mrs. Dean for about six weeks after his wife's death. The case was submitted to the jury upon the theory that the evidence supported a finding either that the defendant had made an express contract to pay plaintiff's bill, or that she had exceeded her authority in assuming to act for Mrs. Dean. As

above shown, the evidence was not sufficient to support a finding that the defendant agreed to pay for the expenses attending the funeral of Mrs. Osborne. Aside from this, the proof overwhelmingly favors the contention that the services which are the subject of this controversy were rendered solely in consequence of credit being given to Mrs. Dean. With respect to the other alleged ground of liability, the justice charged the jury: "If you believe from the testimony here—and I charge you that there is testimony that may support that contention—that Mrs. Peffer did, in her dealings with Mr. Balmford, exceed her authority which she had in trying to make Mrs. Dean liable for this bill, then Mrs. Peffer is responsible herself for it." The defendant duly excepted. From a consideration of the record we are satisfied that the exception was well taken. Mrs. Dean was not called as a witness, and, in the absence of evidence touching the defendant's authority to act for the latter, we cannot indulge in the presumption that when, as testified, the defendant told the plaintiff that her mother would pay towards the bill $10 a month so long as William Osborne worked for her, she neither acted without authority nor exceeded such authority as she possessed. The justice therefore erred in charging the jury that there was evidence that the defendant, in her dealings with the plaintiff, had exceeded her authority, and the error was not cured by the subsequent instruction that it was incumbent upon the plaintiff to prove the unauthorized assumption of authority on the part of the defendant.

The defendant insists that, if the evidence can be construed to harmonize with an individual promise on her part to pay the plaintiff's claim, it is one to answer for the debt of another person; and that, since a note or memorandum thereof was not signed by her, such promise is void by the statute of frauds. A defense founded upon this statute, in order to be available, must be pleaded (Crane v. Powell, 139 N. Y. 379, 34 N. E. 911), and, inasmuch as that was not done in the court below, such defense cannot be urged for the first time on appeal.

It follows from the views above expressed that the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.